UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

REGINALD THAWNEY,

                                   Plaintiff,

               -against-

THE CITY OF NEW YORK; DEPARTMENT OF
CORRECTION COMMISSIONER JOSEPH PONTE;
CAPTAIN NACIREMA SUMMERS SHIELD NO. 1108;
CORRECTION OFFICER BIANERY GARCIA SHIELD
NO. 4878; JOHN DOE CORRECTION OFFICIAL IN
CHARGE OF PRISONER MOVEMENT AT MDC; JOHN
AND JANE DOE CORRECTION OFFICERS ##1-9,

                                Defendants.

---------------------------------------------------------------------- x

**SECOND AMENDED
COMPLAINT AND
JURY DEMAND**

17CV1881(PAE)

ECF CASE

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 USC §§1983 and 1988, the Eighth and Fourteenth Amendments, and the laws and Constitution of the State of New York.

2.      The claim arises from an assault by an inmate on Plaintiff Reginald Thawney on or about April 12, 2016 at the Manhattan Detention Complex ("MDC") in lower Manhattan. The assault was the culmination of gross negligence and deliberate indifference by the defendant correction officials and the City of New York resulting in serious injury to Plaintiff and the deprivation of his right to not be denied of life, liberty and property without due process of law as guaranteed by the 14th Amendment and to be free of cruel and unusual punishment guaranteed by the Eighth Amendment to the Constitution of the United States.

3.      Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as

the Court deems just and proper.

## JURISDICTION

4.      This action is brought pursuant to 28 USC §1331 and 42 USC §1983.  Pendent

party jurisdiction and supplementary jurisdiction over Plaintiff's state law claims are asserted.

5.      Venue is laid within the United States District Court for the Southern District of

New York in that Defendant City of New York is located within and a substantial part of the

events giving rise to the claim occurred within the boundaries of the Southern District of New

York.

## PARTIES

6.      Plaintiff is a citizen of the United States and at all times here relevant was an

inmate in the custody of the New York City Department of Correction ("DOC") in the MDC.

7.      Defendant the City of New York ("the City") is a municipal corporation

organized under the laws of the State of New York.

8.      Defendant DOC Commissioner Joseph Ponte ("Ponte") was at all times here

relevant the Commissioner of DOC.  As such Ponte was personally involved in creating and

continuing DOC and City policies referenced herein, and was personally involved in

implementing and failing to implement security policies and procedures, as well as training,

supervision, and discipline of DOC officers, including the individual defendants herein.  He is

sued in his official and individual capacities.

9.      All Defendants John Doe Correction Officials were at all times relevant

correction officers and/or captains employed by the DOC, and are sued in their individual and

official capacities.

10.     At all times here mentioned defendants were acting under color of state law, to

wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

**CONTRABAND SMUGGLING INTO DOC FACILITIES**

11.     The smuggling of weapons and narcotics into jail facilities is a pervasive and long-standing problem that has barely been adequately addressed by the DOC.

12.     Despite decreasing crime generally and a decreasing inmate population, violence and specifically slashings and stabbing have gone up dramatically in recent years.   Every year since at least fiscal year 2014 (July 1, 2013 to June 30, 2014), slashings and stabbing have gone up between 21% and 29%.[1]

13.   In the most recent data included in the preliminary Mayor's Management Report for fiscal year 2017, reporting on the period from July 1, 2016 to October 30, 2016, slashings and stabbings of inmates have continued to rise alarmingly.  They are up again 21% from the prior period.

14.     In December, 2016, The Department of Investigation for the City of New York ("DOI") spearheaded yet another arrest of a correction officer smuggling in contraband to a Rikers Island facility.  DOI stated that it was the 37th arrest of an officer for such conduct in recent years.[2]

15.     In response to the increases in violence and slashings and stabbings, Defendant Commissioner Joseph Ponte instituted a new policy focusing on visitors who smuggle contraband into DOC facilities.

---

[1] See Mayor's Management Reports for years 2014, 2015, and 2016.

[2] https://www.dnainfo.com/new-york/20161209/hunts-point/rikers-guard-smuggled-booze-marijuana-into-island-friday-doi-says.  See also Exhibit __ DOI press release dated February 22. 2017 announcing the latest arrest for smuggling into DOC facilities by correction officers – just weeks before the incident herein.  DOI further notes it is one of more than three dozen such arrests of correction employees since 2014.

16.     On October 31, 2016, Defendant Commissioner Ponte did a made for television show and tell for WABC, showing the contraband that had been confiscated from visitors over the previous six months that the policy had been in place.[3]

17.     After stating the obvious, that weapon and narcotics contraband are major drivers of jail violence, he continued "we've seen a downward trend" in violence.

18.     Of course, the Charter mandated Preliminary Mayor's Management Report showed that statement to be utterly untrue.  As noted above, in the period July 1, 2016 to October 31, 2016 (the very day he made the statement) slashings and stabbings, as noted above, were up by 21% and overall violence among inmates was up 29%.

19.     Furthermore, DOI Commissioner Mark Peters pointed out, to make a dent in contraband smuggling, a major driver or jail violence, security focus must not only be on visitors, but on DOC employees.  He stated "everything we know suggests that correction officers are the bigger problem."

20.     DOI Commissioner Peters would know.  In November, 2014 his agency produced a report based on a months long investigation of contraband smuggling into DOC facilities.  The findings indicate a security regime that is so lax and so corrupt that it would be laughable if it weren't so serious.

21.     During 2014, an investigator posing as a correction officer attempted to walk into six separate DOC jails carrying all of the following:  a. a plastic bag containing 250 glassine envelopes of heroin, b. one plastic bag containing 24 packaged strips of suboxone, c. two plastic bags containing a total weight of one half-pound of marijuana, d. one 16-ounce water bottle containing vodka  e. and one razor blade.  Exhibit A.

---

[3] http://abc7ny.com/news/investigators-exclusive-contraband-crackdown-at-rikers/1577959/

22.     The investigator successfully entered each of the six facilities, no one stopped

him.  The DOI, both in memoranda while the investigation was being conducted, and in its

public report, explicitly informed DOC officials that the written procedures for contraband

control at DOC jail entries were not adequate, and further, that the implementation of the

inadequate procedures were totally deficient.

23.     Inspector General Jennifer Sculco, who spearheaded the investigation and report,

stated under oath that while the investigation was occurring, her agency repeatedly contacted

DOC to implement changes to tighten security at employee check points.  DOC did nothing.

24.     For example, DOI knew that correction officers smuggling narcotics and weapons

into jail facilities inside of food containers was a vulnerability.  Exhibit B at p. 18:3-19:5.  DOI

observed often that correction officers were permitted to put the food on top of the x-ray machine

without it being scanned in any way, then allowed to proceed.  DOI recommended that if they

were to continue to allow food to be brought into the facilities in containers, that they go through

the x-ray machine and that the front gates should be staffed by supervisors at key times.  Id.

25.     Investigator Sculco testified on August 26, 2015 DOC did not implement such

plans.  Exhibit B at p. 33:18-35:7.

25.     Investigator Jennifer Sculco believed that as of the date of her testimony, August

26, 2015, weapons were still easily accessible to inmates because of smuggling.  Exhibit B p. 67.

24.     The DOI ultimately decided to make their November, 2014 report public to

pressure DOC to make changes.  Exhibit B, at pp. 38-39.

28.     Public pressure apparently has not worked.  On February 10, 2018, DOI issued a

report about an investigation they conducted at DOC's borough facilities, Brooklyn Detention

Center and Manhattan Detention Center, the location of the incident here.  The report says that in

September 2017, an investigator posing as a correction officer smuggled two scalpel blades,

complete with handles and blade covers, 26.8 grams of marijuana and five strips of suboxone

into the Manhattan and Brooklyn detention centers "without incident".  Exhibit C at p. 3-4.

29.     The 2018 Report about MDC further notes that, as has been the case this entire

decade, correction officers at the front gate continue to allow correction officers to put their food

on top of the x-ray machine without scanning it.  DOC knows this is a major "vulnerability" as

demonstrated by Investigator Sculco's testimony but the practice continues.  The DOI

concluded:

> DOI's 2017 investigation revealed that many of the same security
> deficiencies found in 2014 exist not only on Rikers Island, but also
> at two of the DOC-controlled facilities in the boroughs [MDC and
> BKDC]. The investigation found that DOC has not fully
> implemented the recommendations from DOI's 2014 investigation.
>
> Given the continued problem of contraband smuggling by DOC
> staff, highlighted by DOI's continued arrests of DOC staff and
> others who have been charged in smuggling schemes; and the front
> gate security lapses confirmed by two DOI undercover operations
> three years apart; it is evident that DOC must prioritize the strict
> enforcement of the security protocols DOI first recommended in
> 2014 and has continued to recommend since then.
>
> In fact, if DOC had properly implemented the 2014
> recommendations, these protocols would have prevented DOI's
> undercover investigator in 2017 from being able to easily enter the
> facilities with contraband.

Exhibit C at p. 9.

30.     The 2018 Report goes on to reiterate those recommendations.  Had those

recommendations been implemented by DOC, not only would the DOI investigator been

prevented from easily entering the facility with contraband, so would smugglers of contraband.

26.     Moreover, while correction officers continue to be arrested for contraband

smuggling, and violence by slashings and stabbing continue to increase, the Department of

Correction remains in a state of denial.  The 2017 preliminary Mayor's Management Report states:

> The Department [of Corrections] has been working to address the smuggling of contraband by both inmates and visitors through the addition of new surveillance cameras, improved technology and heightened front gate procedures including more searches and new search tactics. In particular, the use of contraband detectors for inmate searches as well as the use of more canine searches for both visitor and inmate searches have contributed to a higher contraband recovery rate.

It makes no mention of correction officer smuggling of contraband despite 37 arrests of correction officers over the last three to four years.

### CONSEQUENCES OF DOC's SECURITY FAILURE FOR REGINALD THAWNEY

27.     After plaintiff entered Rikers Island, he was interviewed by a DOC official about, among other things, whether he had any gang affiliation.  The official noted that he "self-admitted" to being a Crips gang member "and not Blood."  See exhibit D.

28.     Plaintiff was 43 years old at the time and understood that even though he no longer was a Crips gang member, his affiliation with the gang as a younger person put him in danger of assault from rival gang members.

27.     On April 12, 2016 Mr. Thawney had just returned from court to MDC when he was told by correction officials that he would be moving to a new housing unit.

28.     Upon information and belief, the correction official authorizing Thawney's movement to the new housing unit was defendant Captain Nacirema Summers.

29.     The new housing unit, 6 North, housed many high security risk Blood gang members.

30.     The correction officials who moved Mr. Thawney to 6 North knew that DOC had

identified him as a Crip gang with a low security risk classification.  His floor card which followed him contained that information.

31.    Plaintiff objected to the John Doe officers escorting him to 6 North, explaining in sum and substance that he was identified as a Crip gang member and that it was on his floor card.

32.    The John Doe escorting officers explained, in sum and substance, that it was almost time for the count and shift change and he should therefore take his complaint up with the next shift.

30.    It is well known that Crips and Bloods are rival gangs.

31.    When he arrived at the housing unit, he was ordered to go to cell number 23.  On his way, a number of inmates asked if he was "banging".  Mr. Thawney ignored the question and continued towards his cell.

32.    Before getting to his cell he was surrounded my numerous inmates, and, predictably and foreseeably, attacked by them.

33.    The inmates used sharp razor like objects that would have had to be smuggled into the facility.  They were not the type of objects that one would find to be used legitimately in a jail.

34.    Defendant Correction Officer Bianery Garcia and John Doe Correction Officers stood by and did not take timely action to prevent the attack or the continuation of the attack.

35.    DOC officials knew that the housing unit he was transferred to would be dangerous for non-Blood and Trinitarian members.  Exhibit E.

35.    Plaintiff was taken to the medical clinic.  A Captain came to the clinic and told the treating physician not to indicate on the required Injury to Inmate Report that he was slashed with a sharp object to cover up the possession of such objects by inmates designated high

security risks.  The Report, while documenting his lacerations among other injuries, does not include a notation that he was cut by a sharp object.

36.     However, his personal medical records do note that his lacerations were caused by a sharp razor like object.

37.     Mr. Thawney suffered multiple lacerations to the back of his head, left eyelid and under his left eye, among other injuries.

38.     Plaintiff filed a timely notice of claim.  30 days have elapsed since the service of the notice of claim and the matter has not be resolved or disposed.

39.     At all times during the events described above, the officers were engaged in a joint venture and formed an agreement with each other and with other inmates to violate Plaintiff's constitutional rights.  By allowing fights and riots repeatedly to go on for such long periods of time, the officers tacitly provided permission to gang members that they were permitted to fight and assault other detainees.  The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers and other inmates against Plaintiff.  They acted maliciously and with intent to injure Plaintiff, and at best with deliberate indifference to a known threat of physical injury from other inmates.  As a direct and proximate result of the acts of defendants, Plaintiff suffered the following injuries and damages:

        a.  Violation of their right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

        b.  Violation of their right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishments;

c.   Violation of his New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

d.   Violation of his New York State Constitutional right under Article 1, Section 12, to be free from unreasonable searches and seizures;

e.   Physical pain and suffering;

f.   Permanent scarring;

g.   Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, horror, frustration, extreme inconvenience, and anxiety.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 – EIGHTH AND FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES FOR MOVING PLAINTIFF TO THE 6 NORTH HOUSING UNIT)**

40.   The above paragraphs are here incorporated by reference.

41.   <u>Captain Nacirema Summers and John Doe Correction Officers</u>, acted under color of law and with intent and/or deliberate indifference to deprive Plaintiff of his civil, constitutional and statutory rights to be free from cruel and unusual punishment pursuant to the Eighth and Fourteenth Amendments to the United States Constitution when these defendants, who had knowledge of DOC's designation as a Crip gang member,  caused Plaintiff to be housed in 6 North, where high security risk Blood gang members are housed, causing Plaintiff to be injured.

42.   These Defendants are liable to Plaintiff under 42 U.S.C. §1983 and sections six and twelve, Article 1, of the New York State Constitution.

43.   Plaintiff has been damaged as a result of defendants' wrongful acts.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – EIGHTH AND FOURTEENTH AMENDMENT**
**TO THE CONSTITUTION OF THE UNITED STATES FOR NOT PREVENTING THE**
**ATTACK WHEN IT OCCURRED)**

44.     The above paragraphs are here incorporated by reference.

45.     <u>The Defendants Correction Officer Bianery Garcia and John Doe Correction</u>
<u>Officers</u> acted under color of law and with intent and/or deliberate indifference to deprive

Plaintiff of their civil, constitutional and statutory rights to be free from cruel and unusual

punishment pursuant to the Eighth and Fourteenth Amendments to the United States

Constitution, when with deliberate indifference Defendants permitted inmates to attack and

continue to attack Plaintiff, causing plaintiff to suffer injury.

46     Defendant John Doe Correction Officers are liable to Plaintiff under 42 U.S.C.

§§1983 and sections six and twelve, Article 1, of the New York State Constitution.

47.     Plaintiff has been damaged as a result of defendants' wrongful acts.

**THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983- MUNICIPAL AND SUPERVISORY LIABILITY)**

48.     The above paragraphs are here incorporated by reference.

49.     The above paragraphs show that <u>Defendants City of New York and</u>
<u>Commissioner Joseph Ponte</u> admits that weapons inside jails pose safety threats and cause

violence.  He further knows that correction officers are frequently caught smuggling weapons

and other contraband into the facility.  Moreover, Defendants know that the prevalence of

weapons inside DOC facilities are responsible for the dramatic rise of violence, and specifically

slashings and stabbings, of inmates (and correction officers).

50.     Despite this knowledge, Defendants continue to refuse to implement procedures

that would reduce the smuggling of contraband into DOC facilities and fails to monitor front gate staff to ensure that procedures to prevent smuggling are being executed.

51.     The above described policies and customs and failures to train, supervise, or discipline demonstrated a deliberate indifference on the part of Defendants City and Commissioner Ponte, and were the cause of the violations of Plaintiff's damages.

## FOURTH CAUSE OF ACTION
### (NEGLIGENCE FOR PLACING PLAINTIFF IN A HIGH SECURITY RISK BLOOD GANG MEMBER HOUSING UNIT)

52.     The above paragraphs are here incorporated by reference.

53.     Defendants Captain Summers and John Doe Correction Officers owed Plaintiff a duty of care for foreseeable risks of harm from other inmates.

54.     These Defendants knew and had reason to know that Plaintiff faced a serious and significant risk of harm from being placed in such a housing unit.  Nevertheless, these Defendants placed plaintiff in grave danger by placing Plaintiff in a Blood Gang Housing Unit, causing injury.

55.     One or more of the exceptions provided for in New York Civil Practice Laws and Rules § 1602 applies to this action.

56.     Plaintiff was damaged by the defendants' negligence.

## FIFTH CAUSE OF ACTION
### (NEGLIGENCE FOR NOT PREVENTING AND TIMELY STOPPING THE ATTACK ON PLAINTIFF)

57.     The above paragraphs are here incorporated by reference.

58.     Defendants Captain Bianery Garcia and John Doe Correction Officers owed Plaintiff a duty of care for foreseeable risks of harm from other inmates.

59.     Defendant Doe Officers knew and had reason to know that Plaintiff faced a

serious and significant risk of harm by being placed in a high security risk Blood Gang housing unit. These Defendants were in a position to prevent the predictable and foreseeable attack but failed to take steps to prevent it. When the attack began, they failed to stop it in a timely manner, causing serious injury to Plaintiff.

60.     One or more of the exceptions provided for in New York Civil Practice Laws and Rules § 1602 applies to this action.

61.     Plaintiff was damaged by the defendants' negligence.

## SIXTH CAUSE OF ACTION
### (RESPONDEAT SUPERIOR)

62.     The above paragraphs are here incorporated by reference.

63.     The defendants' tortious acts were undertaken within the scope of their employment by Defendant City of New York and in furtherance of the Defendant City of New York's interest.

64.     As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.     In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

B.     Awarding Plaintiff punitive damages in an amount to be determined by a jury;

C.     Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.     Granting such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.


DATED:       Brooklyn, New York
             April 10, 2018

      TO:    New York City Corporation Counsel      Yours, etc.,
             100 Church Street, 4th floor
             New York, NY  10007                    /S/
                                                    Stoll, Glickman & Bellina, LLP
             Commissioner Joseph Ponte              By: Leo Glickman (LG3644)
                                                    Attorney for Plaintiff
             Captain Nacirema Summers Shield No.    5030 Broadway, Ste. 652
             1108                                   New York, NY 10034
                                                    (718) 852-3710
             Correction Officer Bianery Garcia Shield   lglickman@stollglickman.com
             No. 4878